## KROLL et al. v. SCOTT.

### No. 11273.

Court of Civil Appeals of Texas. Galveston.
Oct. 30, 1941.

Rehearing Denied Nov. 20, 1941.

Verne H. Maxwell, W. E. Tomlinson, Jr., W. B. Harrell, and Russell Allen, all of Dallas (Toddie L. Wynne, of Dallas, of counsel), for appellants.

Scott & Shaw, of Houston (Jo E. Shaw and J. T. Scott, Jr., both of Houston, of counsel), for appellee.

GRAVES, Justice.

This appeal is from a $13,956.85—judgment in favor of the appellee against the appellants, entered by the 113th District Court of Harris County—as for 'the accrued amount then due the former by the latter as attorney's fees for legal services rendered—on a jury's verdict in response to special issues, the inquiries and the answers thereto having been as follows:

"Special Issue No. 1.

"Do you find from a preponderance of the evidence that the applicant companies, acting through Cornelius Kroll, reached an agreement with plaintiff, J. T. Scott, Jr., to pay the said J. T. Scott, Jr., the sum of $12,500.00 for the preparation and presentation by the said Scott and Buck of an application for a loan of one million dollars from the Reconstruction Finance Corporation?"

Answer: "Yes".

"In connection with this issue and any other issue in this charge where the word 'agreement' is used, you are charged that the essence of an agreement is the meeting of the minds of the parties thereto as to the terms comprehended therein; that is, the mutual expression of assent by the parties thereto to the terms thereof."

"Special Issue No. 2.

"If you have answered the next preceding special issue 'Yes', and only in that event, then answer this issue:

"Do you find from a preponderance of the evidence that the agreement, if any, inquired about in the preceding special issue, was upon the condition that the said loan should be granted?"

Answer: "No".

"Special Issue No. 3.

"Do you find from a preponderance of the evidence that at the time Cornelius Kroll signed the application of date March 14, 1938 (Plaintiff's Exhibit No. 2), he understood that the legal fee, if any, claimed by the plaintiff for the preparation and presentation of said application by plaintiff and Hugh Q. Buck to the Reconstruction Finance Corporation was the sum of $15,000.00?"

Answer: "Yes".

"Special Issue No. 4.

"What do you find from a preponderance of the evidence to be the reasonable value, if any, of the services, if any, rendered by J. T. Scott, Jr., and Hugh Q. Buck, as attorneys for and at the instance of Cornelius Kroll and the applicant companies, in the preparation and presentation

of the application to the Reconstruction Finance Corporation for the loan involved in this cause?

"Answer by stating the amount, if any, in dollars and cents."

Answer: "$12,500.00".

"In ascertaining the reasonable value of the services, if any, inquired about in this issue, you will take into consideration:

"1.  The nature of such services;

"2.  The amount involved;

"3.  The interests at stake;

"4.  The capacity and fitness of J. T. Scott, Jr., and Hugh Q. Buck for the required work;

"5.  The services and labor, if any, rendered by J. T. Scott, Jr., and Hugh Q. Buck;

"6.  The length of time occupied by such services, if any;

"7.  The benefit, if any, derived by the applicant companies for such services, if any."

The appellants are Cornelius Kroll, Southport Petroleum Company of Delaware, and Southport Petroleum Company, a Texas corporation, the latter two being referred to in the quoted issues as "applicant companies", the appellee being J. T. Scott, Jr., alone, Hugh Q. Buck having only been his assistant in the services for which Scott alone sued, and having assigned any interest of his therein to the appellee.

Appellee Scott in his petition had alleged an express contract for the payment of $12,-500 as agreed attorney's fee, pleading fully the express contract, the time spent, the work done, and the reasonableness of the fee. He also fully pleaded the quantum meruit, in the alternative.

The appellants answered by general demurrer, general denial, and special denial, setting up as a special defense an alleged contract with appellee Scott, that his fee was to be paid on a contingent basis. Appellants did not specially except in their pleadings to appellee's allegations regarding the work done, the time spent, and the reasonableness of the fee, in support of his declared-upon contract.

In inveighing here against the judgment, the appellants do not attack any of the jury's quoted findings as having been without sufficient support in the evidence, but content themselves with four procedural objections only, in substantial purport as follows:

(1) The existence of a verbal contract between the parties for the compensation claimed by appellee having been admitted by the appellants—indeed, having been pled by both parties—their resulting controversy was reduced simply to one of what the terms of such contract were; wherefore, the court reversibly erred in admitting—over appellants' objection—any testimony concerning the time consumed, the amount of work done, and the value of the services performed by the appellee;

(2) The court prejudicially erred in excluding testimony by oral deposition of the witness Hugh Buck, who had been called by appellants, in response to their leading question to him concerning what had been the fee-arrangement, or the discussion of the fee, on the sole ground that the questions were leading—when it was shown that such witness was hostile to appellants or biased in favor of the appellee;

(3) Both parties herein having pled and testified to the existence of an express contract for the claimed compensation for legal services, though differing as to its terms—the appellee declaring that his fee was to be paid unconditionally, the appellants that it was payable only upon condition that the loan sought should be granted—it was reversible error for the court to submit the quantum meruit issue to the jury, as it so did;

(4) In the attending circumstances, it was reversible error for the appellee, in his closing argument to the jury, "to emphasize the importance of the case to him, reiterate his testimony upon the conflicting issues, and then close his argument by calling upon God to witness that he had told the jury the truth."

In the state of this record it is determined that none of these presentments should be sustained; in the first place, as indisputably appears from the pleadings and evidence, which latter is comprehended within the five-volume Statement of Facts, consisting of 1,297 pages, there was only one fact issue raised between the parties and it was the simple, definite detail only of whether or not these parties had agreed that Mr. Scott's admitted contract with them, and his equally conceded services rendered them in furtherance of that express undertaking, had all been mad-

and done upon the distinct understanding between them that he was only to be paid in case the loan that formed the entire subject matter of their joint efforts were obtained; that one dispute, under well-nigh as direct and clear statement of appellants' precise contention upon it as language could recite, was submitted to the arbitrament of the jury, and unequivocally answered by it against appellants' contention. That ended their sole differences upon the facts for good, as they did not even attempt to show such verdict to be unsupported by the testimony.

■■ All the relied-upon assignments of error go to procedural rather than substantive complaints, whereas—since the unattacked findings of the jury must be here accepted as the developed facts of the cause —if any such alleged errors were made, they appear to this court to have been harmless, or at least not to have amounted to such a denial of the rights of the appellants as was reasonably calculated to cause the rendition of an improper judgment against them below, or as prevented them from properly presenting their appeal here.

■ This court holds that neither of the visitations specified in appellants' propositions 1 and 3 were cast upon this appellee merely because of their having admitted the existence between the parties of an express verbal contract for compensation of the legal services here involved.

In the first place, they did not admit the express contract appellee pled for the payment of $12,500 as an agreed-upon attorney's fee, supplementing which, in the alternative, he pled upon the same amount under the quantum meruit—quite the contrary, since they answered his pleadings by demurrer and denial, both general, special denial, and then alleged a wholly different contract with him, in which his fee was declared to be payable only upon a contingent basis; in fact, they pled such a wholly different agreement without having specially excepted at all to the appellee's declaration, either of his express or his quantum meruit claims.

■ In the second place, it indisputably appeared—to the knowledge at that time of appellant Kroll—that the rules of the Reconstruction Finance Corporation, as well as the federal law applicable, prohibited the making of such contingent agreements regarding fees for legal services in loan applications like the one these parties were dealing with. See Section 16(a) of the R.F.C. Act, Sec. 616(a), Title 15, U.S.C.A.

In the third place, it further conclusively if not undisputedly appears that this loan application itself reflects by memorandum written thereon that the original agreement between these parties was to pay appellee Scott a $15,000 fee, which he thereafter voluntarily reduced to $12,500, such reduction being then agreeable to appellant Kroll.

In the fourth place, appellant Kroll's own testimony shows his admission that he then knew of the rules and regulations of · the Reconstruction Finance Corporation so prohibiting the making of a ·fee for legal services in connection with such an application contingent upon the granting of the loan, as contained in the Reconstruction Finance Corporation Act, Sec. 16(a), cited supra.

It is thus indisputably shown that appellants offered but one defense to this suit for the attorney's fee declared upon, which was that the contract alleged could not exist, because appellant Kroll, as an officer of their companies, agreed to pay the appellee a contingent fee for the services rendered, and not a fixed fee, as pled and testified to by appellee, thus by counterclaim setting up a diametrically different contract, which they knew at the time contravened the express provisions of the Reconstruction Finance Corporation Act, Section 4, U.S.C.A., Title 15, Section 604, and which have the force and effect of law.

■ No such an agreement, it being against the declared public policy of the government, could constitute a defense against such an entirely legal cause of action for legitimate services as the appellee herein set up; to permit such a denouement would have the same legal effect as would permit them to plead an illegality in response to a plainly legal claim; it is thought the authorities, by analogy at least, forbid such an interposition. 12 American Jurisprudence, 723; Hall v. Edwards, Tex. Com.App., 222 S.W. 167; Stone v. Robinson, Tex.Com.App., 234 S.W. 1094.

In any event, it is here held that this appellee was not prevented by the interposition of such a defense from supporting by proof not only his cause of action based upon an express verbal contract, but also, in the alternative, his subsidiary one resting upon a quantum meruit for the reasonable value of the services he undisputedly proved he had rendered; this expression,

to the same purport, from the appellee's brief, is quoted with approval as properly stating the applicable rule:

■ "In any view, the appellants' entire answer, beyond the general demurrer, was a denial of the existence of the express contract as alleged ·by appellee on the ground there was a different express contract. Any character of denial of the existence of the express contract would place the appellee in position to offer evidence in support of both the express and the implied contract. He would be denied the right to offer such evidence, only by a plea in confession and avoidance."

This rule is thought to be especially applicable to this cause, under our authorities, because the facts are undisputed that—at the time the express verbal contract sued upon by appellee Scott was made, the relation of attorney and client between himself and the appellants was already, and had been for some time, not only in existence but was well along toward being carried out in co-operative efforts thereof between them. See these authorities: Law Reporting Co. v. Texas Grain & Elevator Co., Tex.Civ.App., 168 S.W. 1001, writ dismissed; 10 Tex.Jur., at page 244; 5 Tex.Jur., at page 438; Bell v. Ramirez, Tex. Civ.App., 299 S.W. 655; 5 Tex.Jur., at page 487; Coon v. Ewing, Tex.Civ.App., 275 S. W. 481, writ dismissed.

■ Appellants' complaint over the exclusion of answers to leading questions propounded by them in oral interrogatories to their witness Hugh Buck is held to be inept, in that the one predicate upon which it is grounded—"that such witness was hostile to appellants, or biased in favor of the appellee"—is not shown by this record to have in fact existed; indeed, after a careful survey of the voluminous evidence upon that inquiry, this court must find that its preponderance was the other way; so that, the trial court's finding on the facts and holding on the law that the statutory prerequis-ites to the admissibility of such testimony, under Vernon's Texas Civil Statutes, Art. 3769c, did not exist, Mr. Buck not having been an employee or agent of either Edward S. Boyles or the appellee Scott, and not having been a party to or interested in the suit, was correct. Dollahite-Levy Co. v. Phillips, Tex.Civ.App., 99 S.W.2d 688. Neither did prerequisites to its admissibility exist outside the statutes.

■ Moreover, it conclusively if not uncontrovertedly appears from the statement of facts that essentially the same testimony regarding the same subject matters as was covered by that excluded from this witness had already been admitted by the trial court without objections from appellants; this alone would relieve the ruling from constituting any prejudicial error. 44 Tex. Jur., 1108; 44 Tex.Jur., 1109; Dudley v. Strain, Tex.Civ.App., 130 S.W. 778, 779, at page 784; Hensley v. Waco Drug Co. Tex.Civ.App., 18 S.W.2d 778, reversed on other grounds, Tex.Com.App., 34 S.W.2d 832.

■ Lastly, it was not error, in all the circumstances given, for the appellee under his pleadings and his greatly extended testimony in his own behalf, to be permitted to argue in persona his cause to the jury, to remark upon its importance to himself—an obvious fact appearing from the testimony—and to comment upon his own testimony as if it had been that of some other witness, as well as to call upon God to witness that he had testified to the truth, which in ultimate effect was but a reiteration of the oath he had taken in becoming such a witness. Lubbock National Bank v. Nickels et al., Tex.Civ.App., 63 S.W.2d 764; Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054.

These conclusions require an affirmance of the trial court's judgment; it will be so ordered.

Affirmed.